MINNA DE KAY et al.

*v.*

THE HACKENSACK WATER COMPANY, RE-ORGANIZED, et al.

1. An executor who uses the funds held by him in his representative capacity to purchase a security which he knows to be invalid, is not entitled to the character of a *bona fide* holder.

2. Where the same person is an officer of two corporations, and he transfers securities issued by one to the other, with knowledge that the securities are subject to an infirmity which renders them invalid in any hands but those of a *bona fide* holder for value, his knowledge is not the knowledge of the transferee.

3. Where a negotiable instrument, void between the original parties, reaches the hands of a *bona fide* holder for value, before maturity, all that such holder can recover on it is what he, or some prior holder, through whom he derives his title, paid for it, with interest.

On exceptions to master's report.

*Mr. William S. Gummere,* for complainants.

*Mr. John Linn,* for the Hackensack Water Company.

*Mr. Charles H. Voorhis,* for Ida E. Voorhis.

VAN FLEET, V. C.

The questions now in dispute in this case arise on exceptions to the master's report. This suit was originally brought to foreclose a mortgage, made by the Hackensack Water Company to Henry H. Voorhis as trustee for the holders of bonds to be issued under the mortgage. The trustee having, on request, refused to institute a suit to foreclose, the complainants filed a bill in virtue of their right as bondholders. The persons standing in the right of the mortgagors, defended on the ground that at the time the mortgage was executed no such corporate organization had been effected as authorized the corporation to execute a

valid mortgage on its franchise, and also on the further ground that the mortgage was invalid because it was executed in violation of the terms of the charter of the corporation. The court of errors and appeals found both grounds of defence to be true, but held that the defendants could not avail themselves of either as against *bona fide* holders of the bonds for value. *Hackensack Water Co.* v. *De Kay, 9 Stew. Eq. 548.* A reference was then ordered to ascertain which of the bonds were held by *bona fide* holders for value. The master reported that Ida E. Voorhis and the Hackensack Water Company, re-organized, were such holders, and to this part of his report exceptions have been taken. And the only question to be decided is, Are the bonds held by these persons entitled to participate in the distribution of the proceeds of sale of the mortgaged premises?

It is entirely clear that the bonds held by Ida E. Voorhis are not entitled to participate. She may now be a *bona fide* holder for value, though the means by which she acquired her bonds are calculated to provoke very strong suspicion, but she was not such holder when the judgment was pronounced, defining which bonds were entitled to participate and which were not. That judgment was pronounced on April 16th, 1883. At that date she did not hold or own a single bond. The bonds she now holds were then held by Charles H. Voorhis. He was not a *bona fide* holder. He not only knew that the mortgage under which the bonds were issued was executed without authority of law, but was mainly, if not solely, instrumental in procuring it to be executed contrary to law. The bonds in his hands were utterly worthless. He could impart neither life nor value to them by transferring them to his daughter, either with or without consideration. An attempt is made to show that these bonds, while in the hands of Mr. Voorhis, were held by a *bona fide* holder. It is said that Mr. Voorhis, in purchasing them, used money in his hands as executor, and that the bonds were, therefore, not his property, but the property of the beneficiaries of the testator whom he represented. But no authority to make such an investment is shown. Such authority will not be presumed, especially in a case where an executor, having made such use of the funds under

his control as would, unless expressly authorized, constitute a misappropriation of them, when called upon to defend the validity of the security he has purchased, makes no pretence that his purchase was authorized by the will of his testator. But suppose he was authorized, still he was not innocent, for he knew as executor what he knew as a man. If he purchased the bonds as executor he knew at the time he made the purchase that he was purchasing securities which he himself had procured to be issued contrary to law. This exception must be sustained, with costs.

The Hackensack Water Company, re-organized, hold ninety-seven bonds. They acquired them all of Robert C. Bacot and John F. Ward. No question is raised as to the right of forty-six out of ninety-seven to participate in the distribution of the proceeds of sale. The dispute is confined to the other fifty-one. The fifty-one disputed were obtained by Bacot and Ward of the First National Bank of Hackensack and of the Hackensack Savings Bank, and subsequently transferred to the present holders. The right of the fifty-one bonds to participate is denied on the ground that the two banks just named were not *bona fide* holders. It is claimed that when these banks acquired the bonds they were chargeable, in law, with knowledge of the fact which rendered the mortgage invalid. This charge is based on this state of facts: Charles H. Voorhis was the president of the corporation which made the mortgage and issued the bonds; as already stated, he procured the mortgage to be made contrary to law; he was also president of both of the banks, and negotiated the transfer of these bonds from the water company to the banks. Now, if the knowledge which Mr. Voorhis acquired while acting as president of the water company is imputable to the banks in consequence of his connection with them as president, then it is clear that the banks are chargeable with all that he knew, and that in this controversy they are entitled to no better position, in a legal point of view, than Mr. Voorhis would occupy himself if he were here claiming to recover on these bonds. But this is not the ground on which the right of these bonds to participate is disputed. The complainants do not claim that the knowledge which Mr. Voorhis possessed as president of the water company

De Kay v. Hackensack Water Co.

can, by law, be held to be the knowledge of the banks, but their contention is this: they say that Mr. Voorhis, being in a position where he could ascertain whether the mortgage had been made pursuant to authority of law or not, and it being his duty, as an officer of the banks, when the bonds were offered, to ascertain this fact, the law will presume that he performed his duty, and thus became cognizant, as president of the banks, before the banks agreed to take the bonds, that the mortgage was invalid. But this reasoning is quite too artificial, I think, to be the basis of a judicial decree. The law will not presume that a man will go in search of information which he already has. Such a presumption would be contrary to both nature and reason. From the time the mortgage was executed Mr. Voorhis knew that it was invalid. He did not need to examine books nor search through papers to learn that fact. His knowledge of the fact was coeval with the fact itself.

The case against the right of these bonds to participate must stand, if it can stand at all, on the ground that the knowledge which Mr. Voorhis acquired as president of the water company became the knowledge of the banks when he came to act for them as their president in a transaction in which the interest of the banks stood opposed to the interest of the water company. But that is not the position in which the law places two principals represented by the same agent. On the contrary, I understand the law to be that where an agent representing two principals concocts a scheme to defraud one of them for the benefit of the other, it will be presumed that he did not disclose, to the principal he intended to cheat, the means by which he intended to effect his purpose. This court has decided that where an officer of a corporation deals with the corporation in a matter in which his interest is opposed to the interest of the corporation, he does not, in such transaction, represent the corporation so as to make his knowledge the knowledge of the corporation. *Barnes v. Trenton Gas Light Co., 12 C. E. Gr. 33.* The same principle has been held to apply where two corporations have, in a transaction between them, been, in part at least, represented by the same agent. It appeared in *In re Marseilles Extension Railway*

11

Co., L. R. (7 Ch. App.) 161, that the same person was a director in both the Marseilles Extension Railway Company and the Credit Foncier and Mobilier of England, and that he had borrowed money of the Credit Foncier for the railway company, to "rig" the market with the stock of the railway company. It was conceded that if the Credit Foncier lent its money to the railway company, knowing that the railway company intended to use the money to "rig" the market with its own stock, the Credit Foncier could not recover. The only attempt made to show such knowledge on the part of the Credit Foncier, was to show that the person who borrowed the money and who constituted part of the managing body of both corporations, knew that the money was to be used for that purpose, but this was held not to be sufficient. Lord Justice James said : " I cannot understand how a director of a company, going to borrow money from another company, of which he is also a director, can put the company from whom he borrowed it in any different position from that which a joint stock bank would be placed by a director of it asking a loan for himself." The burden in this case is on the party alleging want of bona fides. The mere possession, by an endorsee or assignee, of an instrument possessing negotiable qualities, imports, prima facie, that he acquired it bona fide, for value, before maturity, and without notice of any fact impeaching its validity. My conclusion is that the banks were bona fide holders for value, and consequently that the Hackensack Water Company, re-organized, are entitled to stand in their right.

But a single question remains to be considered, and that is, How much are the holders entitled to be paid on their bonds? their full face or only so much as they, or some prior holder, paid? Two matters are settled: first, that the mortgage is void as a security, except in favor of bona fide bondholders; and second, that very few of the bonds were sold for their full face value. The rule is settled in this state that where a negotiable instrument, which is void between the original parties, reaches the hands of a bona fide holder for value, before maturity, so as to exempt it, in his hands, from the infirmity to which it is subject as between the original parties, all that the holder can re-

cover on it is what he, or some prior holder through whom he derives his title, paid for it, with interest. *Holcomb* v. *Wyckoff*, *6 Vr. 35.* The amount that the several holders, except the complainants, are entitled to be paid must be settled by this rule. The amount that the complainants are entitled to be paid has already been determined by the court of errors and appeals.